# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

GARY VALENTINE, Individually and on Behalf of All Others Similarly Situated,

    Plaintiffs,

vs.

UNIVERSAL FIDELITY LIMITED PARTNERSHIP and JOHN LEE JACKSON,

    Defendants.

Case No.: 18-cv-148

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Gary Valentine is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included an agreement to defer payment.

6. Defendant Universal Fidelity Limited Partnership ("UFLP") is a foreign corporation with its principal place of business located at 900 Threadneedle Ste 600, Houston, Texas 77079.

7. UFLP is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. UFLP is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. UFLP is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

9. Defendant John Lee Jackson ("JLJ") is an in-house attorney and employee of UNFLP.

10. JLJ is engaged in the business of a debt collector, using the mails and telephone to collect consumer debts originally owed to others.

11. JLJ is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. JLJ is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

12. On or about March 20, 2017, JLJ and UFLP mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to: "The Hamilton Collection" ("Hamilton"). A copy of this letter is attached to this complaint as Exhibit A.

13. The alleged debt referred to in Exhibit A was allegedly incurred for the purchase of home goods used for personal, family, or household purposes.

14. Exhibit A was the first letter that UFLP and JLJ sent to Plaintiff regarding the alleged debt referenced in Exhibit A.

2

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form, initial communication, debt collection letter used by UFLP and JLJ to attempt to collect alleged debts.

17. Exhibit A is printed on the following letterhead:

*John Lee Jackson* <sup>15</sup>
IN HOUSE CORPORATE ATTORNEY
FOR UNIVERSAL FIDELITY LP
900 Threadneedle Dr. Suite 600 Houston, TX. 77079

**RETURN SERVICE REQUESTED**

03/20/2017

| | OFFICE HOURS: |
|---|---|
| Mon - Tue | 9:00am - 8:00pm EST / 8:00am - 7:00pm CST |
| Wed - Thurs | 9:00am - 6:30pm EST / 8:00am - 5:30pm CST |
| Fri | 9:00am - 6:00pm EST / 8:00am - 5:00pm CST |
| Sat | 9:00am -1:00pm EST / 8:00am - 12:00pm CST |

SE HABLA ESPANOL

Exhibit A.

18. Exhibit A contains the following:

\

lear GARY VALENTINE,

serve as an In-House Attorney and I am an employee of Universal Fidelity, LP. One of
ny responsibilities is to advise them of corporate law and therefore advise them on legal
natters. This letter is being sent to you because I am involved in the collection strategy of
ie outstanding amounts owed to their client. You will not by sued by Universal Fidelity LP
r by me; this is just a collection letter to request you to pay this account owed to The
amilton Collection.

Exhibit A.

19. Exhibit A also contains the following:

o *not consider this letter a notification of intent to sue*; since I do not have the legal
uthority to sue and *Universal Fidelity LP will not sue you*. This is a request for payment
nly. I have not, nor will I, review the detail of your account status.

Exhibit A.

3

20. <u>Exhibit A</u> also contains the following:

> UNLESS YOU NOTIFY UNIVERSAL FIDELITY LP, WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, UNIVERSAL FIDELITY LP WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY UNIVERSAL FIDELITY LP IN WRITING WITHIN 30 DAYS FROM RECEIVING YOUR INITIAL NOTICE, UNIVERSAL FIDELITY LP WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGEMENT OR VERIFICATION. IF YOU MAKE A REQUEST TO UNIVERSAL FIDELITY LP IN WRITING WITHIN 30 DAYS AFTER RECEIVING YOUR INITIAL NOTICE, UNIVERSAL FIDELITY LP WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

<u>Exhibit A</u>.

## **VIOLATIONS OF THE FDCPA AND THE WCA**

21. The text in <u>Exhibit A</u> is inconsistent with 15 U.S.C. § 1692g(a), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

22. <u>Exhibit A</u> states that the consumer has the right to seek validation of the debt "within 30 days after receiving **your initial notice** that you dispute the validity of this debt or any portion thereof . . . ."

<u>Exhibit A</u>.

23. Because UFLP states that the validation period begins to run upon receipt of "your initial notice," UFLP's notice would mislead the unsophisticated consumer to believe that the validation period began before receiving <u>Exhibit A</u> and had, potentially, already expired.

24. The unsophisticated consumer is not expected to keep every bill, account statement, and debt collection letter to confirm that she has not received a debt collection letter from a specific debt collector.

25. Moreover, the unsophisticated consumer could understand "your initial notice" to mean the initial validation notice, possibly provided by some other debt collector that had previously collected on the same debt. *See Sanchez v. Jackson*, 2016 U.S. Dist. LEXIS 160776, at *27 (N.D. Ill. Nov. 21, 2016) ("the notification provisions of § 1692g apply to the initial communication made in connection with the collection of a debt by *each* successive debt collector.").

26. The unsophisticated consumer, upon seeing the validation notice refer to a 30-day validation period that began to run with "your initial notice," would not understand the notice they were receiving to be the initial notice and would be confused and misled as to when the 30-day period actually began.

27. Failure to provide the correct validation notice pursuant to 15 U.S.C. § 1692g(a) is a *per se* violation of the FDCPA. No analysis of materiality of the error or omission is required. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th Cir. 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).").

28. For the purposes of Plaintiff's claims under 15 U.S.C. § 1692e, Defendants' misrepresentation is a material false statement.

5

29. Additionally, <u>Exhibit A</u> misleads the unsophisticated consumer to believe that the letter is being sent by an attorney.

30. The letterhead on <u>Exhibit A</u> expressly states that the letter is being sent by "John Lee Jackson - In House Corporate Attorney For Universal Fidelity LP."

31. The body of <u>Exhibit A</u> expressly opens with "I serve as In-House Attorney and I am an employee of Universal Fidelity, LP. One of my responsibilities is to advise them of corporate law and therefore advise them on legal matters. This letter is being sent to you because **I am involved in the collection strategy of the outstanding amounts owed to their client**." <u>Exhibit A</u> (emphasis added).

32. The letter notes that neither JLJ nor UFLP will sue the debtor, adding "I have not, nor will I, review the detail of your account status." <u>Exhibit A</u>.

33. The statement that "I have not, nor will I, review your account status," is couched in a paragraph that addresses whether the alleged debtor would be sued and the unsophisticated consumer would understand the reference to "account status" as meaning that the attorney has not, and will not, review the account status only with respect to filing a lawsuit.

34. The unsophisticated consumer would understand that the account had been forwarded to UFLP's attorney when no attorney was involved in the collection of the account.

35. The letter states that it is from UFLP's "IN HOUSE CORPORATE ATTORNEY" but, upon information and belief, the telephone number provided in the letter does not connect with the caller with JLJ or UFLP's in-house legal office.

36. The letter states that it is from an attorney but, upon information and belief, the "OFFICE HOURS" listed in the letter reflects neither the hours JLJ works nor the hours UFLP's in-house legal office is staffed.

37. Upon information and belief, the "OFFICE HOURS" listed in the letter are standard office hours and UFLP's in-house attorneys are not available, and do not necessarily work, during those hours.

38. Exhibit A falsely states that it is being sent by an attorney when it is not.

39. A court in this district held that a consumer who received a very similar letter from Defendants stated an FDCPA claim. *Green v. Universal Fidelity, LP,* No. 13-cv-1119-LA, slip op. at 7-8 (E.D. Wis. June 9, 2014).

40. Plaintiff was confused by Exhibit A.

41. The unsophisticated consumer would be confused by Exhibit A.

42. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

43. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

**The FDCPA**

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler &*

*Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. 15 U.S.C. § 1692e(3) specifically prohibits "the false representation or implication that any individual is an attorney or that any communication is from any attorney."

48. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

49. 15 U.S.C. § 1692g(b) specifically prohibits debt collectors from communicating during the 30-day validation period in ways that overshadow or are "inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

## The Wisconsin Consumer Act

50. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

51. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

52. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

9

53. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

54. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

55. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

56. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

57. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly

10

adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

58. Wis. Stat. § 427.104(1)(k) states that "a debt collector may not . . . use a communication which . . . gives the appearance of being authorized, issued or approved by . . . a government, government agency or attorney-at-law when it is not."

## COUNT I – FDCPA

59. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

60. The language in Exhibit A is false, misleading and confusing to the unsophisticated consumer, in that the letter tells the consumer the validation period begins to run upon receipt of "your initial notice."

61. Defendant has failed to accurately provide the portion of the FDCPA validation notice required by 15 U.S.C. § 1692g(a).

62. Defendants violated 15 U.S.C. §§ 1692g(a), 1692g(b), 1692e, and 1692e(10).

## COUNT II – FDCPA

63. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

64. The language in Exhibit A is false, misleading, and confusing to the unsophisticated consumer, in that Exhibit A misleads the unsophisticated consumer to believe that the letter was sent by an attorney and that an attorney was meaningfully involved in the collection of the alleged debt in question.

65. Defendants violated 15 U.S.C. §§ 1692e, 1692e(3), and 1692e(10).

## COUNT III – WCA

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. The language in Exhibit A is false, misleading, and confusing to the unsophisticated consumer, in that Exhibit A misleads the unsophisticated consumer to believe that the letter was sent by an attorney and that an attorney was meaningfully involved in the collection of the alleged debt in question.

68. Defendants violated Wis. Stat. § 427.104(1)(k).

## CLASS ALLEGATIONS

69. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action (c) seeking to collect a debt for personal, family or household purposes, (d) between January 29, 2017 and January 29, 2018, inclusive, (e) that was not returned by the postal service.

70. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

71. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and the WCA.

72. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

73. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

74. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

75. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 29, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com